```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 09-62006-Civ-COHN
                                      (06-60350-Cr-COHN)
                              MAGISTRATE JUDGE P. A. WHITE
```

GARY BAPTISTE,                  :

    Movant,                     :

v.                              :           REPORT OF
                                            MAGISTRATE JUDGE
UNITED STATES OF AMERICA,       :

    Respondent.                 :
_____

## I. Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his convictions following a jury verdict entered in Case No. 06-60350-Cr-Cohn.

The Court has reviewed the motion with attached supporting memorandum of law and attached exhibits (Cv-DE# 1, 8), the government's response with supporting exhibits (Cv-DE# 10), the movant's reply, affidavits and additional pleadings (Cv-DE# 12, 14, 16, 17), the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

## II. Claim

Baptiste raises the sole claim that he received ineffective assistance of trial counsel, because his lawyer failed to move to suppress the wiretap evidence based on the government's noncompliance with wiretap statutes.

## III. Background and Procedural History

The relevant procedural history of the underlying criminal case is as follows. Officers of the Drug Enforcement Agency and the police departments of Fort Lauderdale and Lauderhill, Florida,

began a joint investigation of a large-scale conspiracy to traffic cocaine. One target of the investigation was Luckner Monestine, a known drug trafficker who had sold cocaine to a confidential informant. To discover Monestine's supplier, officers obtained warrants to intercept calls made from the cellular telephones of individuals involved in the conspiracy. Over a six-month period, officers collected information that implicated Monestine, Pubien, and Baptiste. As a result of the investigation, Monestine, Pubien, Baptiste and eleven codefendants were charged in a 32-count indictment for various drug crimes. (CR-DE# 4). Specifically, Baptiste was charged with the following offenses: conspiring to possess with the intent to distribute five kilograms or more of cocaine from February 2006 through December 2006, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A), 960(b)(1)(B); conspiring to possess with the intent to distribute 50 grams or more of cocaine base from February 2006 through December 2006, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A), 846; and three counts of distributing and possessing with intent to distribute 500 grams or more of cocaine on October 23, 2006, October 25, 2006, and November 4, 2006, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B); 18 U.S.C. §2. Id.

Baptiste entered pleas of not guilty to the crimes charged, and the case proceeded to trial before a jury. Before trial, the government filed an information notifying Baptiste of one prior felony drug conviction, which upon conviction in this case of the charges of conspiracy to possess with intent to distribute cocaine (Counts 1 and 3 of the Indictment), required a statutory mandatory-minimum sentence of twenty years' imprisonment and a possible maximum sentence of up to life imprisonment. (CR-DE# 389). Pursuant to written plea and cooperation agreements, codefendants Aldrian Bowe and Luckner Monestine pleaded guilty to Count 1 of the Indictment and testified as government witnesses. (CR-DE# 305,

2

376). Baptiste and Pubien were tried together.

At trial, Agents Brian Geraghty and Michael Baker of the Drug Enforcement Agency and Detective Nick Coffin of the Fort Lauderdale Police Department testified about the electronic telephone intercepts, surveillance, videotapes of meetings between members of the conspiracy, and the seizure of cocaine and crack cocaine.[1] Agent Geraghty was the only officer admitted as an expert witness to testify about drug trafficking operations, methods used to package drugs, and code words used by persons in the conspiracy. The testimonies of the three officers were supplemented by the testimonies of Monestine and cohort Aldrian Bowe. At the close of the case of the government and the conclusion of the evidence, both Pubien and Baptiste moved for judgments of acquittal. Baptiste argued that "[t]here [was] an absence ... of any evidence suggesting that [he] had ever delivered crack cocaine" to anyone involved in the conspiracy and that the "evidence [did] not support going to the jury" for crimes related to "the delivery of powder cocaine." Baptiste further argued that the "evidence [did] not satisfy all the elements of the crime[s]" charged. The Court denied both motions.

The jury found Baptiste guilty of conspiracy to possess with intent to distribute at least five kilograms of cocaine, 21 U.S.C. §§841(a)(1), 846, 960(b)(1)(B), and conspiracy to possess with intent to distribute at least 50 grams of cocaine base, 21 U.S.C. §§841(a)(1), 841(b)(1)(A), 846. (Cr-DE# 400). The jury further returned special verdicts finding that Count 1 involved at least five kilograms of cocaine and that Count 3 involved at least fifty grams of crack cocaine. <u>Id</u>. With regard to Counts 23, 24 and 26,

---

[1] For a more extensive summary of the evidence admitted at trial with citations to the trial transcript, see the excerpt of the Government's brief filed in the direct appeal proceeding which is attached as Exhibit A to the Government's response to the motion to vacate. (Cv-DE# 10-1).

the jury found that each offense involved more than five hundred grams of cocaine. Id. Baptiste was sentenced to a term of imprisonment of 324 months followed by a ten-year term of supervised release. (Cr-DE# 499). Batiste prosecuted a direct appeal from his convictions, challenging the denial of codefendant Pubien's Batson-[2] objection, the sufficiency of the evidence to support his convictions, and the admission of testimony from officers about the meaning of code words used by participants in the conspiracy. See United States v. Pubien, 349 Fed.Appx. 473, 474, 2009 WL 3340109 (11 Cir. 2009). After reviewing and rejecting the claims as meritless, the Eleventh Circuit Court of Appeals affirmed the convictions and sentences in an unpublished written opinion. Id. See also Cr-DE#  713. Shortly after the opinion issued, Baptiste  returned to this court, filing the instant timely motion to vacate pursuant to 28 U.S.C. §2255.

## IV.   Discussion

Baptiste alleges that he received ineffective assistance of trial counsel, because his lawyer failed to file a motion to suppress the wiretap evidence on the basis that the government had failed to comply with 18 U.S.C. §2518(8)(a-d),(9). He essentially maintains that the government failed to timely furnish him with copies of the wiretap applications and orders before the admission of the evidence and there was no indication in the record that the Court in fact authorized wiretaps of his cellular telephone, only the telephones of his codefendants. According to Baptiste, the government violated his Fourth Amendment rights when it intercepted his communications with the other defendants. He also appears to claim that, while the warrants might have authorized the wiretapping of his codefendants' telephones, there were no warrants at all issued as to his telephone, rendering the intercepted calls

---

[2]Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).

unlawful.

To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. <u>Id</u>. at 688; <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11 Cir. 1991). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

The record reveals that before trial, on July 26, 2008, Baptiste filed a <u>pro se</u> motion to dismiss counsel for several reasons, one of which was that trial counsel had refused to file a motion to suppress the wiretap evidence. (Cr-DE# 370). Baptiste appeared to contend that the Court had authorized no warrants pertaining to him. <u>Id</u>. On the same date, the government filed a motion requesting an order from the Court on the admissibility of the wiretap recordings and transcripts pursuant to <u>Fed.R.Evid</u>. 104(a) or, in the alternative, a request for stipulations. (Cr-DE# 371). The government set forth in detail how it would establish authenticity of the tape-recordings and supplied the foundation for the authentication of the translated transcriptions of the recordings. <u>Id</u>.

On July 30, 2007, the Court conducted a hearing on Baptiste's motion to dismiss counsel. (Cr-DE# 377). During the hearing, trial counsel apparently informed the Court that he had not filed a

5

motion to suppress the wiretap evidence, because any such motion would have been frivolous.[3] (Cv-DE# 2 at 11). Baptiste ultimately elected to continue with representation from counsel and he withdrew his motion to dismiss counsel. Id. Days later, on August 2, 2007, during a calendar call, the Court granted the government's motion on the admissibility of the wiretap evidence based upon the executed stipulation. (Cr-DE# 386). Counsel for the government and counsel for Baptiste and codefendant Pubien entered into a written stipulation providing that the equipment used to conduct the court authorized interceptions of telephone conversations was in proper working order; the original recordings were fair and accurate recordings of the conversations recorded; the recordings of the telephone conversations introduced as evidence were authentic identical duplicate recordings of the original intercepted conversations; and the English translations and transcriptions of conversations from Creole to English were fair and accurate. (Cr-DE# 406). The stipulation also provided that the parties agreed to the admission of the recorded conversations and related transcripts. Id. The parties, however, reserved the right to make additional arguments in support of, or in opposition to, the admission of the recordings and transcripts, which they did pursuant to Fed.R.Evid. 404(b). Id. See e.g., Cr-DE# 361, 386.

Baptiste argues that counsel's failure to investigate and then seek suppression of the intercepted conversations amounted to

---

[3]The government states in its response to the motion to vacate that Baptiste asserted during the hearing that he wished to have the motion to suppress filed because he believed the government had forged the signature of the Honorable James I. Cohn, United States District Judge, on the wiretap order. (Cv-DE# 10 at 8 n.2). The government further states that Judge Cohn assured the movant that the signature was genuine. Id. Counsel for the government during pretrial and trial proceedings was AUSA Vaglienti, and she attended the subject calendar call. It is noted that AUSA Vaglienti is same prosecutor who filed the response to the §2255 motion. However, since the record does not include a transcript of the calendar call where such statements were apparently made, the undersigned takes no position as to whether the statements were in fact made by Baptiste and/or Judge Cohn.

deficient performance in that the government had failed to comply with the wiretap statutes.[4] The record does not support Baptiste's underlying assertion that any of the warrants for the wiretaps were fraudulently obtained by the government or were in any way unlawful. Nor is there any indication in the record that the government failed to comply with all pertinent statutes with regard to the intercepted conversations. Baptiste merely alleges in a conclusory fashion that the government did not follow the dictates of 18 U.S.C. §2518(8), (9).[5] Baptiste has not demonstrated that there was a basis upon which counsel could have sought suppression of the tape-recorded conversations and transcripts of those conversations. Also, there is not indication that any additional

---

[4] Effective assistance of counsel embraces adequate pretrial investigation. See Strickland v. Washington, 466 U.S. 668, 691 (1984)(stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." See also McCoy v. Newsome, 953 F.2d 1252, 1262-63 (11 Cir. 1992) and cases cited therein. Accordingly, "[w]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." Id. at 1263, quoting, House v. Balkcom, 725 F.2d 608, 615, 617-18 (11 Cir.), cert. denied, 469 U.S. 870 (1984). To determine whether the investigation was reasonable, the court "must conduct an objective review of [counsel's] performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." Wiggins v. Smith, 539 U.S. 510, 523 (2003)(citation and quotation marks omitted). Choosing to forego a particular investigation must be a "reasoned choice." Id. The Supreme Court has reiterated that "[i]n judging the defense's investigation, as in applying Strickland generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (quoting Strickland, 466 U.S. at 689, 691). See also McCoy v. Newsome, 953 F.2d 1252, 1262-63 (11 Cir. 1992) and cases cited therein.

[5] Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991) (recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983). Moreover, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See Caderno v. United States, 256 F.3d 1213, 1217 (11 Cir. 2001); United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

7

investigation in this regard would have indicated otherwise.

In fact, review of the record instead demonstrates that any such motion to suppress filed by trial counsel would not have been successful. Shortly after new counsel was appointed to represent Baptiste on direct appeal, he filed in this Court a pro se motion, requesting a copy of the order authorizing the wiretap of his cellular telephone. See Motion to Request a Copy of Wire Tap Order. (Cr-DE# 534). Baptiste stated that he needed a copy of the order to "prove or disapprove the authenticity of said order." Id. The motion was summarily denied without response from the government. (Cr-DE# 544). Baptiste next sought a dismissal of the Indictment, in two separate but virtually identical motions, claiming *inter alia* that he had been improperly arrested and prosecuted, because his conversations had been illegally intercepted. (Cr-DE# 549, 558). As he now maintains in the subject motion to vacate, he contended that the order had been forged and was not authentic and that the government failed to comply with 18 U.S.C. §2518(8), (9). Id. He requested a hearing on his motion and the production of the wiretap application and arrest warrant. Id. This motion was similarly summarily denied without explanation. (Cr-DE# 559). By denying the motions, the Court, albeit implicitly, has repeatedly found Baptiste's assertions incredible and without foundation in the record.

Further, Baptiste acknowledges in one of his pleadings in this postconviction proceeding that counsel had indicated that he would not pursue any challenge to the wiretap applications and/or orders, because there was no basis to do so. See Cv-DE# 14 at 1. It is well-settled that the law does not require counsel to raise every available non-frivolous defense. Knowles v. Mirzayance, 556 U.S. ____, 129 S.Ct. 1411, 1419-22 (2009). See generally Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective

for failing to raise a non-meritorious objection); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues). This is true even if there would have been "nothing to lose" from making such a motion. Knowles, 129 S.Ct. at 1419. Thus, a motion to suppress on the grounds now raised by Baptiste was certain to lose, and counsel's failure to file such a motion does not violate any prevailing professional norms. See Knowles, 129 S.Ct. at 1422, *citing*, Strickland, supra, at 688, 104 S.Ct. 2052.

Moreover, even assuming for purposes of this postconviction proceeding that trial counsel's performance was deficient for any or all of the reasons claimed by Baptiste with regard to the wiretap evidence, Baptiste cannot demonstrate that counsel's failure to file a suppression motion resulted in prejudice. In other words, Baptiste is not entitled to postconviction relief in that he cannot satisfy the second-prong of *Strickland*.[6] There is no reasonable probability here that, even if the wiretap evidence had been suppressed, that Baptiste would have been acquitted. On direct appeal, Baptiste challenged the sufficiency of the evidence. In holding that there was sufficient evidence that Baptiste conspired to distribute and distributed cocaine and cocaine base, the Eleventh Circuit stated as follows in its written opinion:

> Baptiste argues that insufficient evidence exists to support his four convictions that he conspired to distribute at least five kilograms of cocaine between February 2006 and December 2006 and he distributed and possessed with intent to distribute 500 grams of cocaine on October 23, 2006, October 25, 2006, and November 4, 2006. Baptiste argues that Bowe

---

[6]The prejudice component of the Strickland test for ineffective assistance of counsel requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 668, 694 (1984). A reasonable probability is one sufficient to undermine confidence in the outcome. Id. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id. See also  Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009).

9

> lacked credibility and his testimony was inconsistent with Monestine's testimony about the quantity of cocaine he received from Baptiste. Baptiste also argues that the government failed to prove that he sold cocaine to Monestine on October 25, 2006, and Baptiste argues that the government failed to prove that he participated in a drug transaction on November 4, 2006.
>
> Sufficient evidence supports Baptiste's convictions. Monestine and Bowe testified that Baptiste was a primary source of cocaine for Monestine, and the government introduced conversations between Baptiste and Monestine from February 2006 through December 2006, in which Baptiste discussed delivering to Monestine on different dates between 2 and 40 kilograms of cocaine. Monestine testified that, on October 23, 2006, he ordered and received from Baptiste two kilograms of cocaine, and Detective Coffin observed Monestine and Baptiste exchange a white plastic bag at a prearranged location. On October 25, 2006, Baptiste delivered to Monestine two kilograms of cocaine and, after the sale, Baptiste increased the price of the drugs. On November 4, 2006, Baptiste had his brother deliver to Monestine two kilo-shaped objects with wet wrapping that tested positive for cocaine, and Baptiste and his brother later that day discussed the poor condition of that cocaine. The district court did not err by denying Baptiste's motion for a judgment of acquittal.

<u>United States v. Pubien</u>, 349 Fed.Appx. 473, 477, 2009 WL 3340109, \*\*3-4.

It is true that the government recorded and transcribed approximately 260 telephone calls, spanning a six-month period, involving Baptiste and his coconspirators. Dozens of such calls and transcripts were published to the jury and two notebooks containing transcripts of all 260 telephone calls were by stipulation furnished to each juror. Included in the transcripts were numerous calls pertaining to the activities of Pubien, Baptiste and other coconspirators. Some of these calls were intercepted pursuant to wiretaps placed on codefendants' cellular telephones, such as Monestine and Vernet. Through the combined interception of the cellular telephones, it was evident that all of the parties knew each other, that they had an existing narcotics relationship, and they were all aware that they were playing a role in supplying cocaine to Monestine who thereafter distributed the cocaine. At

10

trial, three law enforcement officers testified concerning their electronic phone intercepts and physical surveillance as well as the seizure of the cocaine. As stated by the Eleventh Circuit in its above-quoted opinion, the officers' testimony was supplemented by the testimony of the cooperating codefendants Bowe and Monestine. Monestine and Bowe testified that Baptiste was a primary source of cocaine for Monestine. Monestine testified that, on October 23, 2006, he ordered and received from Baptiste two kilograms of cocaine, and this transaction was observed by Detective Coffin. On October 25, 2006, Baptiste delivered to Monestine two kilograms of cocaine and, after the sale and, on November 4, 2006, Baptiste had his brother deliver to Monestine cocaine. Thus, contrary to Baptiste's assertion in this postconviction proceeding, there was more than sufficient evidence inculpating Baptiste in the conspiracies without the now-challenged tape-recordings of conversations conducted on Baptiste's telephone.

Given the facts adduced at trial as summarized herein, no showing has been made in this collateral proceeding that the outcome of the guilt phase portion of the trial would have been different. Consequently, postconviction relief is not appropriate in this case. See Strickland, supra. See also Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). Evidentiary proceedings are not required before disposition of this claim in that the ineffective assistance of trial counsel claim is conclusively refuted by the record.

## VI. Conclusion

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 3rd day of September, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Gary Baptiste, Pro Se
Reg. No. 77177-004
FCC-Coleman (Medium)
P. O. Box 1032
Coleman, FL 33521-1032

Julia J. Vaglienti, AUSA
U.S. Attorney's Office
500 East Broward Boulevard, 7th Floor
Fort Lauderdale, FL 33394